UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICHARD S. TURBYEVILLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV01246 AGF |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security, denying Plaintiff Richard Turbyeville's application for disability insurance benefits, under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, and for supplemental security income benefits, under Title XVI of the Act, §§ 1381- 1384f.[1] The Court concludes that there is no medical evidence in the record to support the Commissioner's decision, and that therefore that decision must be reversed and the case remanded for further development of the record.

Plaintiff applied for disability benefits on October 22, 2003, at the age of 27, alleging a disability onset date of February 28, 2003, due to pain associated with acute irritable bowel syndrome ("IBS"). Following a hearing held on December 30, 2004, an Administrative Law Judge ("ALJ") issued a decision on February 19, 2005, finding that

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

Plaintiff was not disabled. On July 15, 2005, the Appeals Council denied Plaintiff's request for review. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action.

Plaintiff argues that the ALJ erred in assigning Plaintiff a residual functional capacity ("RFC") that was not based upon medical evidence, failing to fully develop the record by recontacting Plaintiff's treating physician, failing properly to weigh the credibility of Plaintiff's testimony, and determining that Plaintiff was not disabled without obtaining the testimony of a vocational expert ("VE").

## BACKGROUND

**Work History**

Plaintiff's first reportable earnings were in 1991, when (at age 15) he earned $1,288. The only years in which he earned more than $6,000 were 1996 ($10,220), 1997 ($6,099), and 2001 ($10,732). Plaintiff had no reportable earnings in 1998, 1999, and 2000. Tr. at 87. His last two jobs were unloading tractor trailers, part-time when help was needed (April 1997 to August 8, 2002); and maintaining the city water works (August 2002 to February 2003). On his benefits application forms he wrote that all jobs were part-time due to stomach pain. Tr. at 111-18.

**Medical Record**

The record indicates that Plaintiff was treated for IBS by Dennis Wen, M.D., from November 1995 until April 1996, during which time Plaintiff's symptoms were fairly well controlled with medication. Tr. at 168. On January 20, 2003, Plaintiff presented to a

hospital emergency room, complaining of chronic diarrhea and rectal bleeding. Examination revealed no abnormalities. Tr. at 218. A colonoscopy done on February 12, 2003, indicated IBS, and on February 13, 2003, Plaintiff was assessed with IBS and major depression and was prescribed Zoloft. Tr. at 216, 211.

A CT scan of Plaintiff's upper abdomen taken on April 18, 2003, showed a small hiatal hernia but was otherwise normal. Tr. at 209. Physician progress notes dated May 22, 2003, indicated that Plaintiff reported that he was unable to do his job of unloading tractor trailers. He complained of internal abdominal pain, described as "deep aching," of nine on a scale of one to ten. Plaintiff reported that he felt worse with activity and manual labor and that Zoloft was not helping him. Examination was benign and Elavil was prescribed. The physician noted that Plaintiff may need to consider a different occupation. Tr. at 205-07. Medical records dated June 19, 2003, noted that Plaintiff reported continued fatigue; chronic abdominal pain was assessed and an upper GI series was recommended. It was noted that Plaintiff was taking Amitriptyline and Xanax. Tr. at 204.

On September 9, 2003, Plaintiff returned to see Dr. Wen, and the bulk of the medical record consists of Dr. Wen's treatment notes and diagnostic tests from that date through November 30, 2004. On September 9, 2003, Dr. Wen noted that when he had treated Plaintiff for IBS in the past, Plaintiff was experiencing a lot of stress and depression, and Doxepin worked well, but that Plaintiff now reported that his symptoms had changed over the past year or two, and that he had chronic constipation and chronic

lower abdominal discomfort. Plaintiff reported that he was fairly happy and denied depression, but that he felt weak due to his abdominal discomfort. Dr. Wen noted that Plaintiff was not in acute distress and following an examination, Dr. Wen did not see a connection between Plaintiff's IBS and his reported fatigue and abdominal pain. Dr. Wen took Plaintiff off Amitriptyline, which tended to cause constipation, and prescribed Klonopin instead. Results of a radiology exam of Plaintiff's kidneys, ureter, and bladder were normal. Tr. 197-201.

At a follow-up visit with Dr. Wen on September 23, 2003, Plaintiff again denied depression, but he reported that he was very aggravated by his abdominal pain and felt debilitated by it and unable to work and do other activities. Dr. Wen noted that Plaintiff was not in acute distress and that an abdominal exam was basically benign. Dr. Wen did not see any organic etiology for Plaintiff's symptoms. Dr. Wen prescribed Serzone and noted that Plaintiff briefly discussed going on disability. Tr. at 194-95.

On October 21, 2003, Plaintiff reported a worsening of his symptoms and severe pain that persisted throughout the day and woke him during the night. Laboratory tests were unrevealing and, noting the recent normal colonoscopy and CT scan, Dr. Wen again noted that Plaintiff was in no acute distress and that the etiology of Plaintiff's symptoms was unclear, but was most likely severe IBS. Tr. at 190-91.

On November 21, 2003, Plaintiff reported that he still had abdominal pain although it was helped somewhat by Vicodin. Dr. Wen noted that Plaintiff was in no acute distress and assessed chronic abdominal pain with negative workup, and told

4

Plaintiff that further diagnostic tests probably were not warranted as they were unlikely to yield anything. Dr. Wen suggested that Plaintiff try long-acting narcotics like OxyContin, but Plaintiff stated that he could not afford it, and so he was continued on Vicodin. Tr. at 187-88.

On December 23, 2003, Plaintiff reported to Dr. Wen that he was markedly worse. He reported some stressors over the past three or four weeks in that his girlfriend of four years unexpectedly left him. He was depressed over the situation but had no suicidal thoughts. This stress reportedly made his abdominal discomfort much more intolerable and he stated that he spent the vast majority of days just curled up in a fetal position. Dr. Wen prescribed Doxepin again, but at higher doses than before, and also gave Plaintiff a supply of Klonopin and Dilaudid (hydromorphone). Tr. at 183-84.

Plaintiff returned to see Dr. Wen on January 8, 2004, and reported that he was handling the stress of his breakup a little better. The results of an examination were unchanged and there was no evidence of organic etiology to explain Plaintiff's symptoms. Tests conducted on January 21, 2004, showed mildly thickened gallbladder wall with no evidence of cholelithiasis or choleeystitis; and mild esophgitis, antral gastritis, and a small hiatal hernia. On January 23, 2004, Plaintiff reported to Dr. Wen that Klonopin had helped him, but that he was still experiencing quite a bit of pain. The examination was unremarkable, as before, and Plaintiff's dosage of Klonopin was increased. Tr. at 171-79.

At a visit with Dr. Wen on February 24, 2004, Plaintiff reported worsening of his abdominal pain. Examination of his abdomen was benign, vital signs were stable, and

Plaintiff was in no acute distress. Again, no organic eliology for Plaintiff's reported pain could be found. Tr. at 177.

In a letter dated April 8, 2004, Dr. Wen wrote that Plaintiff's diagnosis was debilitating severe IBS. Dr. Wen stated that Plaintiff was on multiple medications which helped alleviate Plaintiff's symptoms some, but that he continued to be debilitated. Dr. Wen wrote that Plaintiff was unable to work and that this placed great stress on him, and that Plaintiff also felt that even his daily functioning with activities of daily living were affected. Tr. at 168.

Plaintiff saw Dr. Wen on April 27, 2004, and reported a marked improvement since his last visit, which Plaintiff attributed to the new dosage of Klonopin. Tr. At 164. On June 23, 2004, Plaintiff reported that overall, he was doing fairly well and an abdominal exam was benign. Tr. at 163. A radiographic exam and a CT scan of Plaintiff's abdomen conducted in late June and early July 2004 were negative. But at a follow-up visit with Dr. Wen on July 27, 2004, Plaintiff reported that his pain had worsened and that he seemed to be getting weaker. Dr. Wen assessed Debilitating IBS, with extensive negative workup. Plaintiff was continued on Doxepin, Seroquel and Klonopin, and OxyContin was prescribed as a trial. Tr. at 149-50.

At a follow-up visit on August 20, 2004, Plaintiff reported that he liked the OxyContin, did very well with it five days a week, and overall felt improved. Dr. Wen noted that Plaintiff's abdomen was unremarkable and that his mood and affect were a little more upbeat than in the past. Tr. at 146-47. On September 28, and November 2,

6

2004, Plaintiff reported worsening pain, although he reported no extra stressors in his life and denied being depressed. Tr. at 143-44, 140. Dr. Wen's last report in the record is dated November 30, 2004. Plaintiff again reported that his condition had worsened markedly since his last visit. Plaintiff reported that his pain was fairly severe in his lower abdomen. Once again, Plaintiff was noted as not being in acute distress. OxyContin and Klonopin were continued, Seroquel and Doxepin were stopped, and Zyprexa was started. Tr. at 135-36.

**Plaintiff's Representations on Application Forms**

Plaintiff represented on an agency form on November 6, 2003, that he began living at his current address on June 1, 2003. Tr. at 51. Plaintiff listed the following as drugs he was taking as of December 7, 2003, all prescribed by Dr. Wen for insomnia, pain, and constipation: Risperdal, Hydromorphone, Clonazepam, Doxepin, and Glycolax. Tr. at 104. Also on December 7, 2003, Plaintiff indicated on a check-box form that he was able to do laundry, do dishes, make his bed, vaccum, take out the trash, and go to the post office. He wrote that he prepared frozen dinners and lunch meat for his meals. He also wrote that he could take care of his self-grooming, that he drove ten to 50 miles for doctors' appointments or when he needed groceries, and that he left his home one to two times a week for one to three hours at a time, "depending on Dr. appts." Tr. at 121-22.

**Evidentiary Hearing of December 30, 2004**

Plaintiff testified that he lived by himself in a house owned by his father, had never been married, was 29 years old, had a high school education, was 5' 9", and weighed

about 200 pounds.  He testified that he quit his last job as a city water operator on February 28, 2003, when his lungs filled with fluid and he got pneumonia, and that since then his health had deteriorated substantially.  Plaintiff said that he could no longer work due to pain caused by his debilitating IBS, which his doctor told him was not going to get any better.  He stated that the painkiller he was taking, Hydromorphone, was so strong that half the time he did not know where he was.  Tr. at 24-25.

     Plaintiff testified that he had about two good days a week when he could get around relatively pain-free and take care of errands.  He testified that he did not like to drive because of the medications he was on.  Plaintiff stated that he went grocery shopping about once a month, spent his days watching TV, had no hobbies, did not go to church, and did no housework.  He testified that his father, who was in the middle of restoring the house Plaintiff had been living in for the past year and one-half, would stop by twice a week, do whatever little housework needed to be done, and bring Plaintiff basic supplies.  Plaintiff testified that he could not handle a sedentary job because he was in pain whether he was sitting, standing, or walking.  He stated that he was currently in pain at the hearing, but that he had learned to live with it.  Plaintiff testified a short time later that the day of the hearing was one of his good days and that he was not in any bad pain.  Tr. at 25-30.

     Plaintiff testified that he had no source of income, was receiving food stamps, and had qualified for Medicaid about a year prior to the hearing.  He testified that due to his pain and lack of strength, he could not help his father at all with the restoration work at

8

the house.  He stated that for exercise he tried to walk around the house and would sometimes walk to his mailbox and back a few times.  Plaintiff stated that he had not taken his pain medication the previous day so that he would not be "foggy" at the hearing.  He stated that sometimes he stayed in his pajamas all day and that he had trouble sleeping.  Plaintiff testified that he did not have a girlfriend and that some male friends would come over about three times a week and just sit around and talk.  Tr. at 29-35.

**ALJ's Decision**

The ALJ held that Plaintiff had IBS with a depressive component and that this was a severe impairment, but not one which met the requirements of a disabling impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  In reaching this decision, the ALJ examined the listings for a digestive disorder, chronic colitis, and regional enteritis.  Tr. at 13.  The ALJ then stated, "As to depression, the evidence is equivocal as to whether he even has it."  The ALJ noted that Dr. Wen had on occasion diagnosed IBS with a component of depression/stress, but that usually he diagnosed IBS without the depression/stress modifier.  The ALJ also noted that at times Plaintiff had acknowledged to Dr. Wen to being a little depressed, but at other times had denied being depressed.  The ALJ stated that Plaintiff had taken psychiatric medications with mixed results; had not been hospitalized on a psychiatric basis; and had not been treated by a psychiatrist, psychologist, or mental health counselor.  The ALJ then examined the listing for a depressive disorder and determined that Plaintiff failed to meet the requirements of the listing.  Tr. at 12-13.

The ALJ proceeded to determine whether Plaintiff had the RFC to perform his past work or other work. The ALJ noted that a claimant's subjective complaints were to be considered under the standard set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). The ALJ found that there was "essentially no objective evidence supporting" Plaintiff's allegations of disabling pain and dysfunction, in that neither the extensive laboratory evidence nor the clinical findings showed more than very mild objective abnormalities. The ALJ recognized that when a claimant's subjective complaints are "grossly disproportionate" to the objective medical findings, consideration should be given to a psychiatric impairment. The ALJ repeated his review of the evidence related to depression, this time concluding not only that Plaintiff did not meet the listing requirements for depression, but also that while Plaintiff might have some depression, it was not severe because it did not significantly limit his ability to perform basic work activities. Tr. at 15-17.

The ALJ stated that Plaintiff did not have a good work record to support his allegations, and that, in fact, his work record suggested that Plaintiff was not strongly motivated to work. The ALJ then pointed to several inconsistencies between Plaintiff's testimony at the hearing and statements he had made on forms connected to his applications for benefits, inconsistencies which the ALJ stated did not enhance Plaintiff's credibility. The ALJ noted that at the hearing, Plaintiff testified that he had been living with his father for a year and one-half and that his father did all the housework and took care of Plaintiff's personal needs; whereas Plaintiff wrote on his application forms one

year earlier that he vacuumed, did his laundry, kept the house up, and took care of his own grooming. The ALJ also pointed out that while Plaintiff testified that his medications made him groggy, he rarely, if ever reported this to Dr. Wen, but rather described difficulty with sleeping. The ALJ noted that when Plaintiff went to the emergency room complaining of rectal or GI bleeding, the examination did not indicate any bleeding. The ALJ mentioned that Plaintiff testified that he stopped working because his lungs filled with fluid, whereas there was no medical evidence of such a problem. Tr. at 17.

The ALJ believed that Plaintiff's ability to follow written and oral instructions and his daily activities of watching television most of the day, reading newspapers, leaving the house one to two times a week for one to three hours at a time and driving ten to 50 miles, shopping, preparing his own meals, doing housework and laundry, and walking around the house for exercise, indicated that Plaintiff could sit for prolonged periods, occasionally stand and walk, lift and carry light items, and concentrate on at least simple tasks. Tr. at 17.

The ALJ next addressed Dr. Wen's statements that Plaintiff was debilitated and disabled. The ALJ believed that Dr. Wen's opinion that Plaintiff "may not be able to work in a competitive employment situation" was not a medical opinion, but an opinion on the application of the Social Security Act, a task assigned to the ALJ. The ALJ also found that this opinion was conclusory, not well-supported by clinical or laboratory data, and not supported by the opinion of any other physician. The ALJ observed that Dr.

11

Wen's letter did not describe specific work-related limitations. The ALJ pointed to the statement in May 2003 by another physician that Plaintiff, who at the time was unloading tractor trailers, might need to consider changing occupations, indicating that Plaintiff could do lighter work. The ALJ also noted that the state agency physicians found that Plaintiff did not have a severe impairment. The ALJ saw no need to recontact Dr. Wen to inquire as to the basis of his opinion or clarification thereof because it was clear that the opinion was based on Plaintiff's subjective complaints of pain rather than laboratory or clinical data. Tr. at 18 & n.2.

In sum, the ALJ concluded that Plaintiff retained the ability to perform the full range of sedentary work[2] and that he had no non-exertional limitations, including pain, that affected this ability. The ALJ found that Plaintiff could not perform his past work, and recognized that the burden therefore shifted to the Commissioner to demonstrate that

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

> Occasionally means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as nonexertional, such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *3 (July 2, 1996).

Plaintiff could perform work consistent with his age, education, work experience, and RFC. Based upon the Guidelines, the ALJ found that Plaintiff was not disabled. Tr. at 18-19.

## STANDARD OF REVIEW AND STATUTORY FRAMEWORK

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). This "entails 'a more scrutinizing analysis'" than the substantial evidence standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision. . . . [The court must] also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

To be entitled to SSI benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)-(2). Work which exists in the national economy "means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id. § 423 (d)(2)(A). Both the

impairment and the inability to engage in substantial gainful employment must last or be expected to last for not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 217-22 (2002). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, SSI benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment, or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities, including physical functions, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; understanding, carrying out and remembering simple instructions; using judgment, responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(a)-(b).

In evaluating the severity of mental impairments, the ALJ must make specific findings as to the degree of limitation in each of the following functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

If the claimant's impairment is not severe, the claim is denied. If the impairment is severe, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the impairments listed in the Commissioner's regulation, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment is equivalent to one

of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is one that does not meet or equal a listed impairment, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work, if any. If the claimant has past relevant work and is able to perform it, she is not disabled. If she cannot perform her past relevant work or has no past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors -- age, education, and work experience.

Where a claimant can perform the full range of work in a particular category of work defined at 20 C.F.R. § 404.1567 (very heavy, heavy, medium, light, and sedentary), application of the Medical-Vocational Guidelines will direct the ALJ as to whether the claimant is or is not disabled. Where a claimant cannot perform the full range of work in a category due to non-exertional impairments, such as pain or depression, the Commissioner may not rely upon the Guidelines, but must present testimony by a VE to meet her burden at step five. Wilcutts v. Apfel, 143 F.3d 1134, 1137 (8th Cir. 1998).

Here, the ALJ concluded at step four that Plaintiff could not perform any past relevant work. At step five the ALJ concluded, based upon the Guidelines, that Plaintiff was not disabled, as that term is defined in the Social Security Act.

**DISCUSSION**

Plaintiff argues that there is no medical evidence to support the ALJ's assessment of Plaintiff's RFC, and that the ALJ committed reversible error in discounting Dr. Wen's opinion that Plaintiff was disabled. Plaintiff also argues that the ALJ failed in his duty to further develop the record and did not consider Plaintiff's subjective complaints under the proper standard.

A disability claimant's RFC reflects what he can still do despite his limitations. 20 C.F.R. § 404.1545(a). The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002). Although a claimant's RFC is determined at step four of the sequential evaluation process, where the burden of proof rests on the claimant, the ALJ bears the primary responsibility for determining a claimant's RFC. Id. As noted, an RFC is based on all relevant evidence, but it "remains a medical question" and "'some medical evidence must support the determination of the claimant's [RFC].'" Id. at 1022 (quoting Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001)). The ALJ is therefore required to consider at least some supporting evidence from a medical professional. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

As noted above, Plaintiff asserts that the ALJ improperly disregarded Dr. Wen's opinion that Plaintiff was disabled. The weight to be given to a medical opinion is governed by a number of factors including the examining relationship, the treatment

relationship, the length of the treatment relationship and frequency of examination, the consistency of the source's opinion, and whether the source is a specialist in the area. 20 C.F.R. § 404.1527(d). The ALJ is to give a treating medical source's opinion on the issues of the nature and severity of an impairment controlling weight if such opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. § 404.1527(d)(2). An ALJ may grant less weight to treating physician's opinion when it conflicts with other substantial medical evidence contained in the record. Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Prosch v. Apfel, 201 F.3d 1010, 1013-14 (8th Cir. 2000).

A physician's opinion on the ability of a claimant to work is not controlling, as that is a legal determination to be made by the Commissioner. Choate, 457 F.3d at 870; Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996). Treating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant cannot be gainfully employed, because those are opinions on the application of the statute, a task assigned to the discretion of the Commissioner. Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (letter in which doctor opined that plaintiff was unable to work was not entitled to controlling weight; citing SSR 96-5p, noting that such an opinion, even when given by a treating source, is not entitled to controlling weight "or given special significance," because this is a matter for the ALJ to decide); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

17

Furthermore, although Dr. Wen continued to prescribe medication for IBS, and even to prescribe fairly powerful pain medication, he, himself, recognized that his opinion that Plaintiff was disabled, and even his diagnosis of severe IBS, was not supported by <u>objective</u> medical evidence.  As such, the Court concludes that there is a sufficient basis in this record for the ALJ to discredit Dr. Wen's opinion that Plaintiff was disabled.  <u>See</u> <u>Choate</u>, 457 F.3d at 870-71 (ALJ did not err in declining to give controlling weight to plaintiff's treating cardiologist's opinion that plaintiff was disabled due to cardiac condition, where opinion was unsupported by the objective medical evidence).

Because Dr. Wen, however, was the only medical source to report on Plaintiff's physical impairments, disregarding his opinion left no medical evidence upon which the ALJ could base his RFC assessment that Plaintiff could perform the full range of sedentary work.  Neither the ALJ's decision nor the Commissioner's brief to this Court points to any medical evidence that supports the ALJ's RFC assessment, nor has the Court's review of the record revealed any such evidence.  Under these circumstances, it was reversible error for ALJ to draw his own conclusions with regard to Plaintiff's ability to perform the full range of sedentary work.  <u>See</u> <u>DiMasse v. Barnhart</u>, 88 F. App'x 956, 957-58, 2004 WL 133928, at *2 (8th Cir. Jan. 22, 2004) (per curiam); <u>Shontos v. Barnhart</u>, 328 F.3d 418, 427 (8th Cir. 2002); <u>Pratt v. Sullivan</u>, 956 F.2d 830, 834 (8th Cir. 1992) (per curiam).

Under these circumstances, the Could believes that the Commissioner's decision

must be reversed and the case remanded for further development of the medical record. See Pratt, 956 F.2d at 834.

## **CONCLUSION**

The Commissioner's decision that Plaintiff is not disabled within the meaning of the Social Security Act is not supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further development of the medical record.

An appropriate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 20th day of September, 2006.